**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edgar Moreno,<br>    Plaintiff,<br>vs.<br>Sergeant Zavedra,<br>    Defendant. | No. CIV 17-432-TUC-CKJ<br><br>**ORDER** |

Plaintiff Edgar Moreno ("Moreno") Moreno has filed a 2nd Amended Version (Doc. 41) and a Supersedeing (sic) 2nd Amended Version Attachment of Formal Complaint or Complaints (Doc. 42). As it is not clear which of these documents Moreno seeks to submit as his Second Amended Complaint, the Court will collectively review these documents as a Second Amended Complaint ("SAC"). Additionally, Moreno has filed a Formal Complaint for Prosecutorial Misconduct and; or Persecution with Malicious Intent - Omnibus Motion to Amend Claim of Persecution (Doc. 39) and a Motion for Appointment of Counsel (Doc. 40).

*2nd Version Complaints Filed by Moreno*

On or about July 12, 2018, Moreno filed a 2nd Amended Version. This form document states it is a Complaint for Violation of Civil Rights. It includes six pages of the form (Doc. 41), a four page numbered Memorandum (numbers 1-4) (Doc. 41-1), four unnumbered pages (Doc. 41-1), and two additional unnumbered pages (Doc. 41-3). This document also includes additional memorandum-style pages with non-sequential numbers

1 | (numbers 10-12, 8-13) (Doc. 41-2).

On or about July 13, 2018, Moreno filed a Supersedeing (sic) 2nd Amended Version Attachment of Formal Complaint or Complaints (Doc. 42) ("2nd Amended Version Attachment). This filing includes seven numbered pages (numbers 1-7) (Doc. 42). Based on the last sentence of this document, it appears the numbered pages 8-13 from Doc. 41-2 (Doc. 41-2, ECF pages 1-6) belongs at the end of Doc. 42.[1]

The Clerk of Court has advised the Court that it cannot alternate the pages of the filings without a court order because they were received on separate days. The Court, therefore, will direct the Clerk of Court to re-docket these entries. However, the Clerk of Court will also be directed to retain the current filings because this Order will refer to these documents as currently filed.

The Court will direct the Clerk of Court to place numbered pages 8-13 from Doc. 41-2 (Doc. 41-2, ECF pages 1-6) after numbered page 7 of Doc. 42 (Doc. 42, ECF page 7 of 7). However, numbered pages 10-12 from Doc. 41-1 (Doc. 41-1, ECF pages 9-11 of 11) clearly should follow Doc. 41-2, p. 2 of 6 (p. 2 of 6 ends with subsection U and Doc. 41-1, p. 0 of 11 starts with subsection V. Therefore, the Clerk of Court shall place Doc. 41-1, pp. 9-11 of 11 between Doc. 41-2, p. 2 of 6, and Doc. 41-2, p. 3 of 6. While this designation will then provide for non-sequential and duplicate page numbers, the content of the pages flows more smoothly. The combined 2nd Amended Version (Doc. 41) and the Supersedeing (sic) 2nd Amended Version Attachment of Formal Complaint or Complaints (Doc. 42) shall be docketed together as a Second Amended Complaint.

*Summary of 2nd Amended Version Complaints*

In his 2nd Amended Version, Moreno alleges Sergeant Zavedra ("Zavedra"), Detective Guy Hudson ("Hudson"), Deputy David Estrada ("Estrada"), and Deputy County Attorney Akers ("Akers") as defendants. Moreno alleges he was viciously attacked without

---

[1] As the pagination of the docketed filing is not in order, the Court will refer to ECF pagination of this document when needed for clarification.

apparent reason or cause by Zavedra and other unknown official at the Cochise County Jail on March 17, 2017. Moreno asserts he was "shackled from hands and feet," which were secured behind his back, while speaking with Justice of the Peace Alma Vildosola. 2nd Amended Version, Memorandum (Doc. 41-1, ECF p. 1 of 11). Moreno alleges he was lifted from his hands and feet while they were tied behind his back. This placed the weight of Moreno's body on his shoulder region, which tore fibrosis inside Moreno's socket. Moreno alleges that the tears and resulting arthritic condition caused by the injury has rendered him incapacitated and he can no longer support himself. Elsewhere in his filings, Moreno asserts the "attack was carried out by Ofc. Zavedra and his subordinates." 2nd Amended Version, Memorandum (Doc. 41-2, ECF p. 3 of 6). Moreno also asserts he was not given medical attention for his injuries on March 17, 2017. Moreno asserts he was taken to a hospital weeks after the attack.[2]

Moreno also alleges that he is denied opportunities and the pursuit of happiness when organizations conduct background checks. Such background checks return information regarding a warrant out of Maricopa County as to Edgar Rivera Moreno. Moreno states that the "source, reason, nature, and;or causation of this erroneous information is the official Government data bank." 2nd Amended Version, Memorandum (Doc. 41-1, ECF p. 3 of 11).

On a separate page, Moreno lists additional defendants: U.S. Customs Agent Paul Barco, Douglas Arizona Port of Entry, et al., Nogales Arizona Port of Entry, et al., and any and all naturalization, immigration, U.S. Customs, and Homeland Security agents who have detained, harassed and;or arrested Moreno when entering or leaving the country "[d]ue to erroneous official information provided by official data bank." 2nd Amended Version, Memorandum (Doc. 41-1, ECF p. 5 of 11). Moreno asserts that dates and names of border officials involved can be found in the official data bank and requests this Court to subpoena

---

[2]Moreno alleges additional claims of misconduct while he was incarcerated (e.g., tasered in a puddle of dirty water while his hands and feet were secured behind him), but does not provide the names of any individuals who inappropriately acted or failed to act; Moreno also fails to provide dates of these other incidents.

such information.

On another separate page, Moreno lists additional defendants: Mr. Levy, Office of the Cochise County Superior Court, Mr. Kevin Oursland, Office of the Cochise County Superior Court, Mr. Akers, Cochise County Attorney, Mr. Michael A. Powell, Cochise County, Brian Mcintyre, Cochise County Attorney, Sara Mansom, Cochise County Attorney, Thomas Holz, Office of the Cochise County Superior Court, Mr. Joel A. Larson, Office of the Cochise County Superior Court, Mr. Estrada, Cochise County Deputy, Mr. Hudson, Cochise County Deputy, Internal Affairs Officer Lomelli, Douglas Police Department, Officer J. Alvarez, Douglas Police Department, Officer L. Guerrero, Douglas Police Department, Mr. McIntire, Cochise County Attorney,[3] and Mr. Powell, Cochise County Attorney.[4]

Similarly, on a separate page, Moreno lists as plaintiffs: Maria E. Chavez, Andrea Moreno, Sofia Moreno, Edgar Damian Moreno, and Edgar Moreno, Sr. Moreno asserts the additional plaintiffs are collateral victims.

Moreno alleges he was convinced to plead guilty by Akers (the prosecutor) under false pretenses and threats. Moreno asserts he has been disputing the fact he is Edgar Rivera Moreno since 2005 and that he has never pleaded guilty to any crime of mistaken identity of Edgar Rivera Moreno. Moreno asserts he has provided facial plausibility that Akers, Mr. Conlogue ("the Hon. Conlogue"), Hudson, and Estrada are liable. Moreno states:

> (d) Mr. Moreno does know that the deputies conducted the DUI "investigation" under the mistaken identity because initially they did not believe Mr. Moreno when he told them he was not Rivera. This is why we have search warrant SW 2010000032 for Edgar Rivera Moreno.
>
> (e) At some point before writeing (sic) their reports but after delivering Mr. Moreno at the Cochise County jail Estrada and Hudson were informed that in fact Mr. Moreno was not Rivera, as he had been telling them. Mr. Moreno assumes they were informed by Ofc. Lopez whom was working at the jail and had booked Mr. Moreno. During the booking process it was discovered and established by Ofc. Lopez that Mr. Moreno was not Rivera. Prints and physical description were cross referenced with Maricopa County. Finally they believed Mr. Moreno was and is not Rivera.

---

[3]This appears to be a repeat of Brian Mcintyre, Cochise County Attorney.

[4]This appears to be a repeat of Mr. Michael A. Powell, Cochise County.

- 4 -

2nd Amended Version, Memorandum (Doc. 41-2, p. 1 of 6). Moreno asserts he pleaded guilty in this case because did not receive proper representation from Levy. Moreno also asserts the Hon. Conlogue denied Moreno the constitutional right to represent himself. Moreno states that he understands he gave up the right to argue the facts of his case when he pleaded guilty, but asserts the reason and causation for the guilty plea (no valid reason to deny Moreno adequate representation).

In his 2nd Amended Version Attachment Moreno requests this Court intercede in his state criminal action pursuant to *Younger v. Kugler*, which allows for federal equitable intervention in a state criminal trial where there is a showing of bad faith or harassment by state official responsible for prosecution. Moreno asserts the state law involved in the criminal proceedings in CR 201800211 is patently violative of express constitutional prohibitions. He asserts he has been charged with a statute that does not exist (A.R.S. § 13-1204(A)(3)(e)). Moreno also asserts an officer known not to be credible gave testimony during the grand jury proceedings.

Moreno asserts Doyle B. Johnstun ("Johnstun"),[5] Thomas Bennett ("Bennett"), and Ofc. Joseph Zaisck ("Zaisck") acted callously, maliciously, negligently, and recklessly while working under color of law. Further Jason Linstrum ("Linstrum") showed contempt and reckless disregard to the weight of the evidence. Moreno asserts that, when the officials realize they have made a mistake, they do and say anything to justify and excuse the arrest.

*Formal Complaint for Prosecutorial Misconduct and; or Persecution with Malicious Intent - Omnibus Motion to Amend Claim of Persecution* (Doc. 39)

In his Formal Complaint for Prosecutorial Misconduct and; or Persecution with Malicious Intent - Omnibus Motion to Amend Claim of Persecution (Doc. 39) ("Omnibus Motion"), Moreno alleges persecution with malicious intent from deputy county attorneys

---

[5]Moreno refers to Johnstun Doyle B. In his 2nd Amended Version Attachment, however, he refers to Doyle B. Johnstun. A review of the www.azbar.org states the name as Doyle B. Johnstun.

- 5 -

Johnstun, Bennett, and Lindstrom. Moreno summarizes facts presented in CR 201800016 in the Cochise County Justice Court, Douglas Precinct. Moreno disputes the facts that were presented, alleges they were contradictory, and asserts the government could not corroborate or substantiate the allegations against Moreno. Moreno also asserts that court engaged in prosecutorial misconduct with reckless negligence and malicious intent; Moreno further states that court abused its discretion and "has shown no bounds as to how far it will go to make Mr. Moreno guilty." Omnibus Motion, p. 3. Moreno also asserts that charges have been "initiated, instigated and;or directly perpetrated by the mix-up of identity with [Edgar Rivera Moreno]" in CR 201800044, CR 201800211, and CR 201100283. Omnibus Motion, pp. 5-7. Moreno requests this Court provide a full investigation.

However, Moreno states that he has been found guilty (albeit with blatant fabrications). *Heck v. Humphrey*, 512 U.S. 477 (1994) provides that, in order to recover damages for injuries caused by actions whose unlawfulness would render a conviction or imprisonment invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Moreover, Moreno's allegations indicate that, although Moreno disputed those facts, the government presented facts to support the charges in CR 201800016. There is a "'fundamental policy against federal interference with state criminal prosecutions.'" *Kugler v. Helfant*, 421 U.S. 117, 123 (1975) (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)). While *Younger* allows for federal equitable intervention in a state criminal trial where there is a showing of 'bad faith' or 'harassment' by state officials responsible for the prosecution, *id*., at 54, such intervention is appropriate only where:

> the state law to be applied in the criminal proceeding is "flagrantly and patently violative of express constitutional prohibitions," *id*., at 53, 91 S.Ct., at 755, or where there exist other 'extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.' *Ibid*.

*Kugler*, 421 U.S. at 123-4. It does not appear this case warrants federal intervention. To any

extent Moreno claims officers inappropriately detained him on the basis of incorrect information learned from a law enforcement database, law enforcement agencies may rely on computer databases to establish probable cause if it is reasonable for them to do so. *See Herring v. United States*, 555 U.S. 135, 146–47 (2009) (declining to apply exclusionary rule because officer's reliance on computer database is reasonable where no evidence of routine or widespread errors on computer database exist); *id.* at 146 ("In a case where systematic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system."); *Arizona v. Evans*, 514 U.S. 1, 17 (1995) (O'Connor, J., concurring) ("Surely it would not be reasonable for the police to rely ... on a recordkeeping system ... that routinely leads to false arrests."). Here, Moreno has not alleged that the database is not reliable, only that he is frequently mistaken for another person included in the law enforcement database. Moreover, to any extent Moreno is arguing that it is unconstitutional for law enforcement, while pursuing one law enforcement goal, to potentially address alternate or collateral law enforcement goals, the Court disagrees. The Supreme Court has not limited law enforcement in such a manner in other respects. For example, the Supreme Court has stated that its holding "does not impair the ability of police officers to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose, even where such action may result in the arrest of a motorist for an offense unrelated to that purpose." *City of Indianapolis v. Edmond*, 531 U.S. 32, 48 (2000)).

Additionally, the Court does not find that aggressive prosecution, which presents facts disputed by Moreno, constitutes bad faith or harassment. This Court finds these allegations do not present an extraordinary pressing need for immediate federal equitable relief. The Court will deny this request.

*Motion for Appointment of Counsel* (Doc. 40).

Moreno requests an attorney be appointed to represent him in this matter. He asserts counsel is needed because Moreno cannot afford counsel, he is not emotionally stable enough to present the case in his best interest, and his imprisonment will greatly limit his ability to

litigate this complex case. Moreno also asserts that counsel is needed to identify all unknown defendants, present evidence and cross-examine witnesses at trial, and to assess claims and damages.

The Court may request an attorney to represent a person proceeding *in forma pauperis* who is unable to employ counsel. 28 U.S.C. § 1915(d). The Court does not have the power to make a mandatory appointment of counsel, but the Court may request assistance from volunteer counsel. *Id.*; *United States v. 30.64 Acres of Land*, 795 F.2d 796 (9th Cir. 1986). The Court finds the Application to Proceed *in Forma Pauperis* previously filed in this case supports a finding that Moreno does not have the resources to hire an attorney.

In determining whether to request the assistance of an attorney, the Court considers the "likelihood of success on the merits and the ability of the [plaintiff] to articulate [his] claims pro se in light of the complexity of the legal issues involved." *Richards v. Harper*, 864 F.2d 85, 87 (9th Cir. 1988), quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983); *see also Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (court may ask counsel to represent indigent litigant under § 1915 only in "exceptional circumstances").

However, the Court considers that Moreno has been able to articulate some of his claims with specificity. It is not clear when Moreno has not provided specific detail (e.g., dates of events) that the failure is because of ineffectiveness of Moreno or simply that he does not recall the details. Moreover, Moreno has presented factual and legal arguments (including this request for counsel), and has provided documents to the Court. Further, the claims do not appear to be unusually complex. Further, at this point, there is no basis to conclude that there is a likelihood of success on the merits. *Richards*, 864 F.3d at 87.

The Court finds that any difficulty in presenting the claims *pro se* is not based on the complexity of the legal and factual issues involved but rather on the general difficulty of litigating *pro se.* *See generally Wilborn v. Escalderon*, 789 F.2d 1328 (9th Cir. 1986). Furthermore, Moreno has done a credible job in submitting his request for an attorney. *See e.g. Jackson v. Dallas Police Dept.*, 811 F.2d 260 (5th Cir. 1986). Moreno has not provided any information that permits the Court to conclude that Moreno is unable to present his

claims. The Court declines to seek volunteer counsel at this time.

However, in the event this matter proceeds to a trial, the Court recognizes that a presentation of evidence and cross-examination may require greater skill than Moreno has or can develop. The Court will deny the Motion for Appointment of Counsel with leave to resubmit. *See e.g., Reynolds v. Foree*, 771 F.2d 1179 (8th Cir. 1985); *Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983). In the event this matter is scheduled for trial, Moreno may resubmit his request.

Additionally, the Court advises Moreno that Step Up to Justice (http://www.stepuptojustice.org/) offers a free, advice-only clinic for self-represented civil litigants on Thursdays from 1:30 p.m. to 3:30 p.m. If Moreno wishes to schedule a clinic appointment, he should contact the courthouse librarian, Mary Ann O'Neil, at MaryAnn_O'Neil@LB9.uscourts.gov.

*Screening of Second Amended Complaint*

The Court previously screened a complaint and an amended complaint filed in this case. This Court is required to dismiss a case if the Court determines that the allegation of poverty is untrue, 28 U.S.C. § 1915(e)(2)(A), or if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Therefore, the Court will screen the SAC (Docs. 41 and 42).

As the Court previously stated, the United States Supreme Court has determined that, in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id.* at 555 n. 3. The complaint "must contain something more . . . than . . . a statement of

facts that merely creates a suspicion [of] a legally cognizable right to action." *Id*. at 555. Although a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), has not been filed in this case, the Court considers these standards in screening the FAC to determine if Moreno has "nudge[d] [his] claims across the line from conceivable to plausible." *Id*. at 570.

In discussing *Twombly*, the Ninth Circuit has stated:

"A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009).

This Court must take as true all allegations of material fact and construe them in the light most favorable to Moreno. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). In general, a complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds*, 457 U.S. 800. Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, the Court is not to serve as an advocate of a *pro se* litigant, *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), in attempting to decipher a complaint.

*42 U.S.C. §1983*

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that

were not initially pled. *Id.*

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

*Excessive Force*

In his 2nd Amended Version, Moreno alleges Zavedra and "other unknown officials" viciously attacked Moreno "without apparent reason []or cause." (Doc. 41-1, p. 1 of 11). Moreno also states that Zavedra and his subordinates attacked him. (Doc. 41-2, p. 3 of 6). He does not specifically name Hudson, Estrada, or anyone else as the subordinates and he does not specifically state that either of them lifted Moreno from his hands and feet while they were secured behind his back. Rather, it is not clear from the non-conclusory allegations that Hudson and Estrada were even present when Zavedra allegedly attacked Moreno. *See e.g. Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978) ("[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made").

Force is excessive if the officers' use of force was "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state. *Kingsley v. Hendrickson*, ___ U.S.___, ___, 135 S. Ct. 2466, 2472-73 (2015); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an investigatory stop). In determining whether the use of force was reasonable, the Court should consider factors

- 11 -

including, but not limited to the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley*, 135 S. Ct. at 2473; *see also White v. Roper*, 901 F.2d 1501, 1507 (9th Cir.1990).

Because officers are often forced to make split-second decisions in rapidly evolving situations, the reasonableness of a particular use of force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. at 2473-74 (citing *Graham*, 490 U.S. at 396). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Constitution. *Graham*, 490 U.S. at 396 (citation omitted).

Moreno has alleged that Zavedra attacked him without provocation. It is difficult to consider whether Zavedra's action were "objectively unreasonable" in light of the facts and circumstances because Moreno has not provided any additional factual allegations surrounding the incident. However, in light of the need to construe *pro se* pleadings liberally, the Court finds Moreno has stated an excessive force claim against Zavedra. However, the Court will dismiss the claim against Hudson and Estrada as an affirmative link between the injury and the conduct of these defendants has not been alleged.

*Medical Treatment*

Moreno also alleges that he was not given medical attention for his injuries on March 17, 2017. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.

1 | *Jett*, 439 F.3d at 1096 (quotations omitted).

2 | "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrections*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. CutterLabs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Moreno has failed to link the denial of specific medical care to any defendant. He has not alleged that he requested medical treatment from or showed the extent of the injury to any named defendants. Moreno's allegations that he did not receive timely medical care are insufficient to state an Eighth Amendment medical claim. The Court will dismiss this claim.

*Mistaken Identity*

Moreno also alleges that he is denied opportunities and the pursuit of happiness when organizations conduct background checks, which provides information as to Edgar Rivera Moreno. However, Moreno does not allege the database is unreliable or the information was incorrectly entered into the database. Rather, the facts alleged by Moreno indicate that, in the incident discussed by Moreno, the database apparently provided enough information to distinguish Moreno from Edgar Rivera Moreno. Even construing Moreno's filing liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the Court finds Moreno has not stated a claim upon which relief can be granted.

*False Arrest, False Imprisonment, and Malicious Prosecution*

Moreno alleges Johnstun, Bennett, and Zaisck acted callously, maliciously, negligently, and recklessly while working under color of law. Further, Linstrum showed contempt and reckless disregard to the weight of the evidence. Moreno asserts that, when the officials realize they have made a mistake, they do and say anything to justify and excuse the arrest. Moreno also asserts he was convinced to plead guilty by Akers (the prosecutor) under false pretenses and threats. Moreno further states he has provided facial plausibility that Akers, the Hon. Conlogue, Hudson, and Estrada are liable and that he pleaded guilty in the case because did not receive proper representation from Levy.

The Ninth Circuit has quoted the Supreme Court of Arizona's discussion of the interplay between the torts of false arrest, false imprisonment, and malicious prosecution:

> False imprisonment may be defined as the detention of a person without his consent and without lawful authority. The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention. A detention which occurs pursuant to legal authority, such as a valid warrant, is not an unlawful detention. If the arrest or imprisonment has occurred pursuant to valid legal process, the fact that the action was procured maliciously and without probable cause does not constitute false arrest or false imprisonment.

*Mundt v. United States*, 611 F.2d 1257, 1259 (9th Cir. 1980), *quoting Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975). In other words, "[i]f the imprisonment is under legal process but the action has been carried on maliciously and

- 14 -

without probable cause, it is malicious prosecution. If it has been extrajudicial, without legal process, it is false imprisonment." *Id., quoting* 1 F. Harper & F. James, Law of Torts 232 (1956). *But see Reams v. City of Tucson*, 145 Ariz. 340, 701 P.2d 598 (App. 1985) (distinction between probable cause to arrest and probable cause to initiate or continue a criminal proceeding).

Moreno conclusorily alleges that the arrest and detention of Moreno was under legal process and that the actions were made maliciously. Although Moreno alleges the actions were malicious, he has not alleged sufficient facts that the arrest or detention were without probable cause.[6] The Court finds Moreno has failed to state a claim for false arrest, false imprisonment, or malicious prosecution.

Moreover, to any extent Moreno is seeking to allege claims against the Hon. Conlogue, Moreno has not adequately alleged a claim upon which relief can be granted. Rather, "[j]udges are immune from damage actions for judicial acts taken within the jurisdiction of their courts." *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986). A "judge lacks immunity where he acts in the 'clear absence of all jurisdiction' or performs an act that is not 'judicial' in nature. *Ashelman*, 793 F.2d at 1075, *citations omitted*. The Ninth Circuit has stated:

> The Supreme Court has illustrated the distinction between an act in the clear absence of jurisdiction and an act in excess of jurisdiction with this example:
>
>> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other had, if a judge of the criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1389 (9th Cir. 1987), *quoting Stump v. Sparkman*, 435 U.S. 349, 357 n. 7, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Here, Moreno has not alleged any facts which would support an allegation that the Hon. Conlogue is not entitled to judicial immunity.

---

[6]Indeed, Moreno acknowledges that he entered a plea of guilty.

Even if a claim upon which relief can be granted had been adequately alleged, there is a "'fundamental policy against federal interference with state criminal prosecutions.'" *Kugler*, 421 U.S. at 123 (citation omitted). While *Younger* allows for federal equitable intervention in a state criminal trial where there is a showing of 'bad faith' or 'harassment' by state officials responsible for the prosecution, 401 U.S. at 54, such intervention is appropriate only where:

> the state law to be applied in the criminal proceeding is "flagrantly and patently violative of express constitutional prohibitions," *id*., at 53, 91 S.Ct., at 755, or where there exist other 'extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.' *Ibid*.

*Kugler*, 421 U.S. at 123-4. Here, although Moreno asserts defendants acted in bad faith, Moreno's documentation indicates that he has pleaded guilty to offenses in state court. The Court finds insufficient extraordinary circumstances have been shown to warrant federal intervention. Lastly, in order to recover damages for injuries caused by actions whose unlawfulness would render a conviction or imprisonment invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994). Moreno has not made any such allegation. The Court finds Moreno has failed to state a claim upon which relief can be granted.

*Additional Plaintiffs and Defendants*

Moreno has listed additional persons as plaintiffs. However, an affirmative link between an injury to the additional plaintiffs and the conduct of a defendant has not been alleged. *Rizzo*, 423 U.S. at 371-72 (affirmative link between the injury and the conduct of a defendant must be alleged).[7] The Court will dismiss the additional plaintiffs from this

---

[7]Additionally, the Court notes that a *pro se* plaintiff may not represent the interests of other individual *pro se* plaintiffs and all pleadings/filings/motions must be signed by each

action.

Similarly, Moreno has listed multiple additional defendants. However, Moreno has not alleged he suffered a specific injury as a result of the conduct of the additional defendants. *Id*. The Court finds no claims upon which relief can be granted have been stated against these additional defendants.

*Claim for Which an Answer Will be Required*

Liberally construed, Moreno has stated an excessive force claim against Zavedra. The Court will require Defendant Zavedra to answer this claim.

Accordingly, IT IS ORDERED:

1. The Clerk of Court shall refile the 2nd Amended Version (Doc. 41) and the Supersedeing (sic) 2nd Amended Version Attachment of Formal Complaint or Complaints (Doc. 42) as follows:

    a. The combined 2nd Amended Version (Doc. 41) and a Supersedeing (sic) 2nd Amended Version Attachment of Formal Complaint or Complaints (Doc. 42) shall be docketed together as a Second Amended Complaint.

    b. The Clerk of Court shall place numbered pages 8-13 from Doc. 41-2 (Doc. 41-2, ECF pages 1-6) after numbered page 7 of Doc. 42 (Doc. 42, ECF page 7 of 7). The Clerk of Court shall place Doc. 41-1, pp. 9-11 of 11 between Doc. 41-2, p. 2 of 6, and Doc. 41-2, p. 3 of 6.

    c. The Clerk of Court shall retain the current filings as a reference to this alternate pagination.

2. All Plaintiffs other than Edgar Moreno are DISMISSED.

3. All Defendants other than Zavedra are DISMISSED.

---

individual *pro se* plaintiff to which a pleading/filing/motion is to be attributed. *See e.g. DePonceau v. Pataki*, 315 F.Supp.2d 338, 341 (W.D.N.Y. 2004).

1      4.     All claims other than the excessive force claim by Moreno against Zavedra are DISMISSED.

5.     Defendant Zavedra shall answer Moreno's claim of excessive force.

6.     The Clerk of Court must send Plaintiff this Order, the newly formed Second Amended Complaint, a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Zavedra.

7.     Moreno must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Moreno fails to comply with this Order.

8.     If Moreno does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to Zavedra. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

9.     The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

10.     The United States Marshal must notify Defendant Zavedra of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Zavedra must include a copy of this Order. The Marshal must immediately file a signed waiver of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Zavedra within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

       a.     personally serve copies of the Summons, Second Amended Complaint, and this Order upon Zavedra pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

       b.     within 10 days after personal service is effected, file the return of

service for Zavedra, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Zavedra. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

11. A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.

12. Zavedra must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

13. The Clerk of Court shall amend the caption to reflect the sole remaining parties as Edgar Moreno, plaintiff, vs. Sergeant Zavedra, defendant.

DATED this 21st day of November, 2018.

_____
Cindy K. Jorgenson
United States District Judge